John F. Campbell
60 Campbell Road
Livingston Manor, NY 12758

January 2nd, 2025

United States Bankruptcy Court,
Southern District of New York
The Honorable Kyu Y. Paek
355 Main Street
Poughkeepsie, NY 12601-3315
paek.chambers@nysb.uscourts.gov

Re:  John F. Campbell, Debtor
     Case No. 23-35668-KYP, Chapter 7
     Case No. 24-09009-KYP, Adversary Proceeding

     Attorney David Finkler's Refusal to Relinquish Case File and Materials

Dear Judge Paek,

It has been over one month since I requested that Mr. Finkler be removed as my attorney in this case.

On December 10th, the Court held a hearing on the matter and granted my request. During the same conference I asked Mr. Finkler to send me the case file and all communications with Mr. Fontenot. The Court instructed Mr. Finkler to comply.

Not having received any materials from Mr. Finkler, on December 16th I emailed him requesting that he deliver "all physical materials as well as all digital materials, including all email correspondence with Radiance' counsel [Mr. Fontenot]."

To date, Mr. Finkler has not complied with my request; I ask that the Court instruct him to fully comply with my request.

By way of background, below I am detailing some of the difficulties I have had with Mr. Finkler while he has "represented" me. The below is a summary of what I intended to say to the Court during December 10th conference.

1. I will cover two areas which highlight my reasons for wishing to terminate Mr. Finkler. The first area is how Mr. Finkler has handled Discovery.

2. At the very beginning of his representation, I informed Mr. Finkler, both verbally and in writing, that Mr. Fontenot began representing the Plaintiff on October 14th, 2013. Since 2013, Mr. Fontenot has engaged in extensive post-judgement litigation on behalf of the Plaintiff.

3. After obtaining a charging order against certain of Debtor's LLCs on October 21st, 2013, Mr. Fontenot issued the following subpoenas and demands for Discovery:

    a. The December 30th, 2013 subpoena to Marion Bank;

    b. The January 13th, 2014 Post Judgment Discovery to the Debtor, consisting of Combined Interrogatories and Discovery Production Requests;

    c. The October 2nd, 2018 subpoena to Marion Bank; and

    d. The October 19th, 2018 subpoena to Marion Bank.

4. One of the entities listed in the October 2013 charging order is Whigham Place Property Management. Whigham Place maintains its accounts at Marion Bank, which Mr. Fontenot has repeatedly subpoenaed.

5. The subpoenas issued to Marion Bank starting in December 2013, and to the Debtor in January 2014, provided Mr. Fontenot and the Plaintiff with bank statements and financial records which detailed transactions which Plaintiff, more than ten years later, now claims were fraudulent and which Plaintiff now claims violated the October 2013 charging order.

6. Mr. Finkler also knew that Mr. Fontenot, as counsel to Plaintiff, had sued the Debtor, alleging fraudulent conveyance of limited liability company ownership interests. Mr. Fontenot, Plaintiff's counsel, obtained a default judgement in Mississippi District Court on October 23rd, 2015, holding that the conveyances were null and void. Mr. Fontenot and the Plaintiff did not take any subsequent action after obtaining this default judgment against the Debtor.

7. The subpoenas to Marion Bank, the Post Judgment Discovery to the Debtor, all of the materials provided in response, as well as the materials related to the 2015 Mississippi default judgment, are important to Debtor's defense. The materials prove that as early as January 2014, Mr. Fontenot and the Plaintiff had full knowledge of transactions they now claim to be fraudulent and in violation of the charging orders and yet they failed to take any action until 2023, more than 9 years later.

8. I discussed the statute of limitations with Mr. Finkler many times. I discussed the fact that Mr. Fontenot and the Plaintiff chose not to take action more than ten years ago when they already had the records which they now claim support their allegations of fraudulent conveyance and violations of the charging order. I made it clear to Mr. Finkler that I wanted Plaintiff to produce all materials which were produced to the Plaintiff in response to the subpoenas and Debtor's response to the January Post Judgment Discovery, in a manner that made clear the timing of receipt of such materials by Mr. Fontenot.

9. In November 2023, Mr. Finkler advised me to have him submit a Memo in Opposition to Plaintiff's Motion to Extend Time to File an Adversary Proceeding. I authorized him to do so. He filed the Memo with the court without allowing me to review it. Mr. Finkler's Memo consisted of a captioned first page, 2 full pages of text, and a signature page. Much of the text was a recounting of facts and dates. For his 2 ½ page memo, Mr. Finkler billed me for 9 hours of his time.

10. After that experience, I told Mr. Finkler that I wanted to see all documents before they were finalized and that I wanted to be informed in a timely manner of all of the details of my case.

11. Mr. Finkler prepared and sent his discovery request to Mr. Fontenot in mid-June of this year. He did not give me an opportunity to review the request.

12. I did not learn that Mr. Finkler had sent his discovery request to the Plaintiff until I received a bill for the work on June 28th, 2024.

13. In July, I had to repeatedly ask Mr. Finkler for Plaintiff's response. Eventually his secretary sent me some materials, but did not include Plaintiff's response to Interrogatories. Not being a lawyer, I failed to request the response to Interrogatories.

14. The Plaintiff's response did not include the production to the various Marion Bank subpoenas and to the Post Judgment Discovery dating back to December 2013.

15. During the October 29th hearing on Mr. Finkler's Motion to Avoid Liens, one of the lawyers mentioned that they were having a phone call the following day regarding discovery.

16. After the October 29th hearing, I again told Mr. Finkler that I wanted the materials produced in response to Plaintiff's subpoenas dating back to 2013.

17. Two days later, I asked Mr. Finkler about the phone call regarding discovery with Mr. Fontenot. Mr. Finkler told me that Mr. Fontenot said he would produce documents. Mr. Finkler then forwarded to me an email from Mr. Fontenot which included a summary of transactions from 2018 to 2022 – which I assume was related only to Plaintiff's December 9th, 2022, subpoena to Marion Bank.

18. Not included in Mr. Fontenot's summary were the alleged fraudulent conveyances dating back to 2009, and not included in Mr. Fontenot's summary were the alleged violations of the charging orders since October 21st, 2013 – which are the dates Plaintiff has used in its Adversary Complaint.

19. Mr. Finkler did not send me Plaintiff's July response to Debtor's Interrogatories until early November. It was only in November that I learned that Plaintiff had falsely claimed lack of knowledge until 2023 of the transactions which they now claim to be fraudulent and in violation of the charging orders, dating back more than one decade.

20. I was not informed by Mr. Finkler that he and Mr. Fontenot had negotiated the terms of a Stipulation and Order for the Court to consider, regarding discovery until after I had requested permission to terminate Mr. Finkler. The Stipulation and Order did not include reference to any of the materials I had requested Mr. Finkler to obtain.

21. The Second Area I will cover has to do with Mr. Finkler's Motion to Avoid Liens.

22. Since August of last year, when Mr. Finkler began representing me, he has frequently told me how he was going to use "lien stripping" to get rid of the Plaintiff's charging orders. He billed me many hours for research on "lien stripping" and for phone calls with other counsel.

23. In August of this year, Mr. Finkler sent me a bill for his work on a "motion to avoid Radiance lien."

24. He billed me 25 hours for work on his motion plus 4 hours related to the appearance – 29 hours in total.

25. I was shocked. The bill was for a tremendous amount of money, yet Mr. Finkler had never discussed preparing this motion with me. I was also surprised that the motion was for "avoiding a lien" when he had been telling me about, and billing me for, work on "lien stripping" for more than a year.

26. I Googled "lien stripping Chapter 7 Bankruptcy" and in less than 30 seconds I learned that lien stripping is only applicable in Chapter 13 bankruptcies.

27. I also researched "lien avoidance", I read 11 U.S.C. 522(f) several times, and could not understand how 522(f) was applicable to Plaintiff's charging orders and my LLC interests which had been classified as non-exempt by Mr. Finkler.

28. Eventually, I got Mr. Finkler on the phone. He told me what he told the Court during the October 29th hearing: that the charging orders were "all encompassing" and that they impaired my exempt personal property in New York State.

29. I was skeptical since the language of the charging orders is clear that it is directed solely at my financial interests in the named LLCs; Mr. Finkler had not listed my LLCs as exempt property. Nevertheless, I thought that since he was the lawyer, he had an infinitely deeper understanding of the law than I did.

30. In the same phone call, Mr. Finkler also told me that the Plaintiff's Money Judgment for $317,000 had been discharged. I have no idea if he was being truthful or not.

31. Mr. Finkler did not tell me that there was an October 29th hearing on his Motion to Avoid Liens; he told me there was an October 29th court conference regarding whether or not the parties could submit Motions for Summary Judgment.

32. I attended the October 29th hearing, and heard Mr. Finkler tell the Court the same false story that he had told me, regarding the "all encompassing" nature of the charging orders impairing my exempt property in New York State.

33. After the October 29th hearing, Mr. Finkler sent me a bill which included 2.5 hours for "Prep for oral argument" and 1.5 hours for "Appear for motion/Pre-trial." I find it hard to believe that Mr. Finkler spent 2.5 hours working on reciting the falsehood that charging orders are all-encompassing. As for the 1.5 hours for his court appearance, I believe the entire appearance before the Court lasted less than 15 minutes; the rest of the wait time Mr. Finkler had his screen blanked out and was likely billing other clients. Mr. Finkler has billed me over $40,000 for his larcenous representation.

34. Mr. Finkler has not been honest and transparent with me from the start. He has repeatedly misrepresented facts, the law, and failed to represent my interests. He has acted to inflate his billing, billed me for work he did not perform, and create work for himself which does not in any way serve my interests, but does allow him to further inflate his billing.

Throughout this process I have had two attorneys working against me, both Mr. Fontenot and Mr. Finkler. I am at the point where I cannot, and should not, believe a single word that comes out of his mouth.

Thank you for your time and patience in this matter.

Respectfully,

John F. Campbell